■ SAKEENA MAHASE, Respondent, v MANHATTAN AND BRONX SURFACE TRANSIT OPERATING AUTHORITY et al., Appellants, et al., Defendant. [771 NYS2d 99]—

Order, Supreme Court, Bronx County (Patricia Williams, J.), entered June 18, 2002, which denied the motion of defendants Manhattan and Bronx Surface Transit Operating Authority and New York City Transit Authority (the Authorities) pursuant to CPLR 3212 for summary judgment dismissing the complaint as against them, reversed, on the law, without costs, the motion for summary judgment granted and the complaint dismissed as against the Authorities. The Clerk is directed to enter judgment accordingly.

This slip-and-fall case arose when plaintiff allegedly stepped to meet an approaching bus at a bus stop in the Bronx on the snowy evening of February 1, 2000. The issue before us is whether the theory of liability plaintiff now asserts, that the Authorities failed in their duty to provide a safe entrance onto the vehicle, was impermissibly raised for the first time in her deposition testimony, having never been mentioned in her notice of claim, statutory hearing, complaint or bill of particulars.

In those prior filings and statements, plaintiff relied on the theory that the public sidewalk and/or curb near the bus stop

was defective and/or poorly maintained, liability for which generally lies with defendant City of New York (*Brown v City of New York*, 250 AD2d 638, 639 [1998]; *Gall v City of New York*, 223 AD2d 622, 623 [1996]; *Pantazis v City of New York*, 211 AD2d 427 [1995]). However, "[t]he duty owed by [a transit authority] to . . . a boarding passenger[ ] has been described as 'a reasonably safe, direct entrance onto the vehicle, clear of any dangerous obstruction or defect which would impede that entrance' " and such obligation is generally a question of fact for the jury (*Gross v New York City Tr. Auth.*, 256 AD2d 128, 129 [1998], quoting *Blye v Manhattan & Bronx Surface Tr. Operating Auth.*, 124 AD2d 106, 111 [1987], *affd* 72 NY2d 888 [1988]).

The latter theory of liability is precluded here. It is precluded for failure to assert it in the original notice of claim (*see Barksdale v New York City Tr. Auth.*, 294 AD2d 210, 211 [2002]; *Chipurnoi v Manhattan & Bronx Surface Tr. Operating Auth.*, 216 AD2d 171, 171-172 [1995]; *Wanczowski v City of New York*, 186 AD2d 397 [1992]; *Brown v New York City Tr. Auth.*, 172 AD2d 178 [1991]; *Mazzilli v City of New York*, 154 AD2d 355, 357 [1989]; *Demorcy v City of New York*, 137 AD2d 650, 650-651 [1988]), and the alternative means for asserting it, a late notice of claim, pursuant to General Municipal Law § 50-e (5), or a General Municipal Law § 50-e (6) amendment, would have been of no avail. In the latter two instances, aside from the issue of obtaining leave of the court, the theory was not asserted until 17 months after plaintiff's accident, exceeding the 1 year and 90 day limitations period for a late notice (*Barksdale*, 294 AD2d at 211; *De La Cruz v City of New York*, 221 AD2d 168, 169 [1995]; *see also Tiburcio v New York City Tr. Auth.*, 270 AD2d 110 [2000]; *Chipurnoi*, 216 AD2d at 172), and the General Municipal Law § 50-e (6) notice of claim amendment provision merely permits correction of good faith, nonprejudicial, technical mistakes, defects or omissions, not substantive changes in the theory of liability (*Torres v New York City Hous. Auth.*, 261 AD2d 273, 274 [1999], *lv denied* 93 NY2d 816 [1999]; *Chipurnoi*, 216 AD2d at 171-172; *Dale v Half Hollow Hills School, Cent. School Dist. No. 5*, 37 AD2d 778 [1971]). Furthermore, plaintiff's admission at her statutory hearing, that she fell as the bus approached and before it stopped to allow passengers on and off, tends to belie this theory of liability since it indicates that plaintiff suffered her injury prior to any purported negligent act by the Authorities' bus driver employee. Finally, the theory's belated assertion smacks of expediency in preserving plaintiff's case against the Authorities. Concur—Tom, J.P., Williams and Marlow, JJ.

Andrias and Saxe, JJ., dissent in a memorandum by Saxe, J., as follows: On a winter night, February 1, 2000, plaintiff was waiting for the number 10 bus at the bus stop at the corner of West 237th Street and Henry Hudson Parkway West in the Bronx, when, while attempting to cross to the street where the approaching bus would be pulling up, she fell and was injured. While she has all along asserted that the dangerous condition causing her fall included snow, ice and defective pavement, at her examination before trial she specified for the first time that a knee-high snow bank blocked her access to the street, forcing her to cross it in order to get to the bus, at which time she fell.

Keeping in mind that summary judgment should not be granted where material questions of fact are present (*see Zuckerman v City of New York*, 49 NY2d 557 [1980]), in my view the motion court properly denied the summary judgment motion of Manhattan and Bronx Surface Transit Operating Authority (MABSTOA) and the New York City Transit Authority (the Authorities), leaving for trial the question of whether the Authorities breached a duty they owed to plaintiff, as a prospective passenger, to provide a safe path to board their vehicles.

The Authorities' motion for summary judgment seeking dismissal of the complaint against them was premised upon the reasoning that they had no legal duty to maintain the sidewalks, since it is the City of New York, rather than MABSTOA or the Transit Authority, that is charged with the care, maintenance and repair of public sidewalks, including bus stops and the adjoining curbs (*see Pantazis v City of New York*, 211 AD2d 427 [1995]). However, just as "[a] common carrier owes a duty to an alighting passenger to stop at a place where the passenger may safely disembark and leave the area" (*Miller v Fernan*, 73 NY2d 844, 846 [1988]), the Authorities also owe boarding passengers a duty to ensure that there is " 'a reasonably safe, direct entrance onto the vehicle, clear of any dangerous obstruction or defect which would impede that entrance' " (*Gross v New York City Tr. Auth.*, 256 AD2d 128, 129 [1998], quoting *Blye v Manhattan & Bronx Surface Tr. Operating Auth.*, 124 AD2d 106, 111 [1987], *amended* 132 AD2d 478 [1987], *affd* 72 NY2d 888 [1988]). " 'Stated differently, imposing liability requires a finding that the placement of the bus dictates that the passenger, in order to board the bus, must negotiate a dangerous or defective path' " (*id.*). Whether this obligation has been breached is generally a question of fact to be determined by the jury (*Gross v New York City Tr. Auth., supra*).

So, in *Gross*, where the plaintiff was hit by a bicyclist while attempting to board a bus that had stopped one lane away from

the curb, this Court reinstated the complaint, holding that "[i]t is for a jury to decide whether requiring prospective passengers to navigate a full traffic lane, in the busy Times Square area, in order to board the bus presented a foreseeable risk of injury" (*id.* at 129). In contrast, in the *Blye* case, the evidence at trial established that there was available to the plaintiff an unobstructed, direct path she could have taken to board the bus, without the necessity of crossing the tree well over which she tripped, and therefore this Court vacated the liability verdict against MABSTOA (124 AD2d at 113). The Court did, however, hold that the scope of duty to a boarding passenger is the same as that to an alighting passenger: "[to] provide a safe, direct place from which to board" (124 AD2d at 114).

Plaintiff's deposition testimony is sufficient to create a question of fact as to whether the Authorities breached their duty toward her by, in effect, forcing her to traverse a dangerous pathway in order to get from the bus stop to the bus. She testified that a great deal of snow had accumulated at the bus stop, so that a knee-high snow bank blocked her access to the street. Consequently, when the bus neared, she stepped to the street in an attempt to reach the approaching vehicle but slipped, her left foot got caught, and she fell on her left side on the street. She managed to get up and, with the assistance of a passerby, boarded the bus.

It is of no import in this context that plaintiff fell before the bus had pulled into the bus stop area, or that the vehicle may not, at the time of her fall, have even been particularly close to her position. From the circumstances she described, a bus was approaching, which was why she needed to make her way from the bus stop to the street to board it; and a question of fact is presented as to whether there was a safe means of doing so.

The Authorities emphasize that at no time prior to her deposition did plaintiff refer to a knee-high snow bank or the breach of a duty to provide a safe path to board the vehicle. At her statutory hearing plaintiff attributed her fall to a crack in the ice; the notice of claim she served upon the City of New York and the New York City Transit Authority asserted that the accident had occurred "by reason of uneven curb and uneven sidewalk and ice and snow which accumulated thereat"; her complaint asserted that defendants had violated their duty to properly care for and maintain the public sidewalks and to keep them in proper and safe condition for public travel; and her bill of particulars set forth defendants' negligence as consisting of their lack of proper maintenance of the public sidewalks by permitting them to "become and remain in a broken, cracked,

defective, uneven, traplike, hazardous and dangerous condition."

Initially, while any differences in plaintiff's narrative of the incident may be raised by defendants to challenge plaintiff's credibility at trial, they do not permit this Court to reject outright her deposition testimony (*see Healey v Firestone Tire & Rubber Co.*, 212 AD2d 351 [1995]).

Nor is plaintiff precluded from making her case against the Authorities at trial because of her failure to specifically state in her notice of claim that the condition which caused her to fall was a snow bank and the absence of a safe path through it upon which to walk to the bus. General Municipal Law § 50-e (6) provides that "a mistake, omission, irregularity or defect [in the notice of claim] made in good faith . . . may be corrected, supplied or disregarded, as the case may be, in the discretion of the court, provided it shall appear that the other party was not prejudiced thereby." The point of the notice of claim requirement of General Municipal Law § 50-e is to ensure the municipal authority was given enough information about the accident to "locate the place, fix the time and understand the nature of the accident" (*Brown v City of New York*, 95 NY2d 389, 393 [2000]). The operative concern in considering whether a notice of claim is sufficient to cover a particular claim is whether the notice provided enough information to enable authorities to "investigate, collect evidence and evaluate the merit of a claim" (*id.* at 392). The critical point is whether the defendant is prejudiced by the inclusion of matter not contained in the notice (*see Torres v New York City Hous. Auth.*, 261 AD2d 273, 274 [1999], *lv denied* 93 NY2d 816 [1999]).

Plaintiff's notice fully apprised defendants that she fell on a defective condition involving snow, ice and defective pavement, while she attempted to cross from the bus stop to the road in order to board the approaching bus. It also notified defendants that the basic legal theory of plaintiff's claim was negligence concerning the condition of the pathway upon which she walked. This is sufficient to implicitly include a claim that defendants had failed to ensure that a safe pathway was available for a passenger boarding a bus at that bus stop.

Although a claimant may not add a new cause of action or a completely new theory of liability which was not included, directly or implicitly, in the notice of claim (*see e.g. Mazzilli v City of New York*, 154 AD2d 355 [1989]; *Wanczowski v City of New York*, 186 AD2d 397 [1992]), a theory of liability that is related to, or implied by, the one specified in the notice of claim should be permitted to proceed. For instance, in *Melendez v*

*New York City Hous. Auth.* (294 AD2d 243 [2002]), where the notice of claim asserted that the plaintiff's fall was due to the accumulation of liquid and debris and failure to provide a proper handrail, this Court concluded that while the notice did not cover claims of negligent hiring or inadequate illumination, it did cover the other claims of the bill of particulars. As the record in *Melendez* reflects, those claims that were permitted to proceed included assertions that defendant failed to provide plaintiff with a safe place to walk; improperly permitted and allowed the staircase and premises to be used by the public; failed to post a warning of the hazardous condition; and failed to barricade or otherwise guard against the hazardous condition.

The question is whether the failure to include any particular information in the notice of claim interfered with or otherwise prejudiced defendants' ability to conduct a timely investigation into the challenged claim (*see Goldman v New York City Health & Hosps. Corp.*, 186 AD2d 629 [1992]). Here, the same investigation into the circumstances of plaintiff's accident would have been undertaken whether or not plaintiff initially included the specifics to which defendants now point. Defendants would have determined, in any event, the nature of the condition of the sidewalk and roadway in the area of the bus stop that night, and interviewed the bus driver whose bus plaintiff was helped onto after her fall, who presumably could report as to the conditions in the area at that time. Keeping in mind that there is a 90-day period in which a notice of claim must be filed, and that snow conditions generally melt or change configuration within weeks, or even days, even if plaintiff's notice of claim had reported the exact hazardous snow condition described in her deposition, defendants would have been in no better position to investigate the complained-of condition upon filing of the notice of claim.

Because the current basis for the claim of liability against the Authorities is sufficiently related to that in the notice of claim, and because no different investigation would have been undertaken had plaintiff's notice of claim included the specific claim she now includes against the Authorities, there is simply no prejudice to the Authorities caused by permitting plaintiff's claim to proceed.